## HECHT v. METZLER.

(Circuit Court, D. Utah. August 16, 1897.)

### No. 195.

ADMISSION OF STATES—TRANSFER OF PENDING CASES—WAIVER OF RIGHT.

The Utah enabling act authorized the constitutional convention to provide for the transfer of pending cases to the proper state and federal courts. Accordingly it was provided in the state constitution that, in cases of concurrent state and federal jurisdiction, a transfer to the federal court should be made upon motion and bond, in default whereof the case should proceed in the proper state court. *Held*, that where neither party sought a transfer, but after final judgment in a territorial court one of them took an appeal to the state supreme court, and the other joined in submitting it there for decision, this constituted an election to proceed in the state courts, and

precluded the defendant from transferring the case to the federal court after a reversal and remand for a new trial.

W. L. Maginnis, for plaintiff.

Williams, Van Cott & Sutherland and E. M. Allison, Jr., for defendant.

MARSHALL, District Judge. This action was instituted on December 29, 1893, in a district court of Utah territory. A trial was had, and judgment in favor of the defendant rendered on May 15, 1895. Thereafter a motion for a new trial was duly made, argued, and submitted for decision. This motion had not been decided when Utah became a state, on January 4, 1896. The records and files in the case were, in pursuance of the state constitution, and without any act of the parties, transferred to the district court of the state of Utah, the judge of which had, as judge of the territorial court, heard the motion for a new trial. On January 17, 1896, without any new submission of the motion, it was denied. On February 21, 1896, the plaintiff appealed to the supreme court of the state of Utah from the judgment and order denying his motion for a new trial. The latter court, on March 6, 1897, reversed the judgment, and remanded the cause to the district court of the state, with direction to grant a new trial. On the coming down of the remittitur the defendant filed in the said district court his petition averring the necessary diversity of citizenship of the parties, and the jurisdictional value of the matter in controversy, and a bond in due form for a removal of the case to the circuit court of the United States. The state court ordered the removal. After the entering of a copy of the record in the circuit court, the plaintiff moved to remand, alleging, among others, the following reasons: (1) That the action was pending in the supreme court of the territory when Utah became a state, was thence transferred to the supreme court of the state, and was therein argued and decided without objection by the defendant; (2) that at the time of the admission into the Union of the state of Utah the cause was not pending in any district court of the territory.

The case was never pending in the supreme court of the territory. The appeal was taken on February 21, 1896, after the admission of Utah to the Union, and was to the supreme court of the state. Before January 4, 1896, the date of statehood, although a judgment had been rendered in the district court of the territory, a motion for a new trial was therein pending and undetermined. It depended upon the decision of this motion whether further proceedings would be had in the district court, and the action must be deemed to have been then pending in that court. Hoadley v. San Francisco, 12 Fed. Cas. 250; Wegman v. Childs, 41 N. Y. 159; Andrews v. Cassidy, 142 Mass. 96, 7 N. E. 545; Howell v. Bowers, 2 Cromp., M. & R. 621. But the question remains whether the appeal by the plaintiff to the supreme court of the state, the appearance of defendant in said court, and the submission of the cause to it without objection, preclude the defendant from transferring the case to this court, when, on its reversal by the supreme court, it was again pending in the district court of the state. This question depends on a construction

of section 17 of the act of congress enabling the people of Utah to form a constitution and state government, and of section 7 of article 24 of the constitution so adopted. In section 17 of the act of congress it was enacted that the convention therein provided for should "have the power to provide, by ordinance, for the transfer of actions, cases, proceedings, and matters pending in the supreme or district courts of the territory of Utah at the time of the admission of the said state into the Union, to such courts as shall be established under the constitution to be thus formed, or to the circuit or district court of the United States for the district of Utah; and no indictment, action, or proceeding shall abate by reason of any change in the courts, but shall be proceeded with in the state or United States courts according to the laws thereof respectively." By section 7 of article 24, the convention ordained that all actions, cases, proceedings, and matters pending in the supreme and district courts of the territory of Utah when it was admitted as a state should be appropriately transferred to the supreme and district courts of the state respectively, except that "all actions, cases, proceedings and matters which shall be pending in the district courts of the territory of Utah at the time of the admission of the state into the Union, whereof the United States circuit or district courts might have had jurisdiction had there been a state government at the time of the commencement thereof respectively, shall be transferred to the proper United States circuit and district courts respectively; and all files, records, indictments and proceedings relating thereto shall be transferred to said United States courts: provided, that no civil actions, other than causes and proceedings of which the said United States courts shall have exclusive jurisdiction, shall be transferred to either of said United States courts, except upon motion or petition by one of the parties thereto made under and in accordance with the act or acts of the congress of the United States, and such motion and petitions not being made, all such cases shall be proceeded with in the proper state courts." It will be seen that, whereas section 17 of the enabling act gave the constitutional convention the power to provide for the transfer of certain cases pending in the supreme or district courts of the territory to the circuit or district court of the United States, congress did not itself undertake to make such transfer, or to authorize it, except as it might be provided for by the convention. This delegation of authority to the convention was valid. In McCornick v. Telegraph Co., 25 C. C. A. 38, 79 Fed. 449–451, the circuit court of appeals for the Eighth circuit, speaking by Judge Lochren, said:

"The constitutional convention of Utah was a governmental body, which congress could properly provide for to aid in preparing for the change from the territorial existence to statehood, and could properly invest it with authority to provide for all the details incident to such change. One of these unavoidable details was the proper distribution and placing of the causes depending in the territorial courts, which would go out of existence with the change."

That the convention did not exercise the full power conferred on it by congress by providing for any transfer to a United States court of actions pending in the supreme court of the territory at the time

Utah became a state is immaterial. This action was then pending in a district court of the territory, and as to it full provision was made. The status of the action being so fixed, and it falling within the concurrent jurisdiction of the United States circuit court, either party had a right to remove it to that court. The ordinance of the constitutional convention did not prescribe any time within which this right of transfer should be exercised. But an election of forum once made would be binding and irrevocable. So long as no proceeding in the action was had in the state courts, it could not be contended that an election had been made. When the plaintiff appealed to the supreme court of the state, he elected to further prosecute the case in the state courts. The defendant was then required to make his election. A failure to then remove the case must be taken as a waiver of the right. He could not silently stand by and see the plaintiff incurring expense, and altering his position on the faith of a continued exercise of jurisdiction by the state courts, without losing his right to so change the forum as to render such expense nugatory. When the defendant appeared without objection, and united with the plaintiff in asking a decision of the cause by the supreme court of the state, he but emphasized an election that his failure to act had already made irrevocable. It is no answer to this to say that without any act of defendant the cause was carried to the supreme court of the state, and that the ordinance of the convention did not provide for a removal of causes from that court to the circuit court of the United States. The ordinance did not provide for the removal of any cause from any specified state court to the United States courts. It did provide for the transfer of certain cases which should be pending in a district court of the territory at the time Utah became a state to the proper United States court, upon condition that a prescribed petition and bond should be presented to the state court in which the record was lodged, when the right was exercised. The transfer was from the territorial court; the state court having custody of the record was but the channel through which it came. And, if the case was of the class permitted to be transferred, the mere fact that the record was in the supreme court of the state at the time the right to transfer was asserted would be no objection to its exercise, provided that the election of the party seeking the transfer to remain in the state courts had not theretofore been indicated. The United States court, by a transfer, became the successor of the territorial court. It was to complete whatever was left undone in that court. Koenigsberger v. Mining Co., 158 U. S. 51, 15 Sup. Ct. 751; Bates v. Payson, 4 Dill. 265, Fed. Cas. No. 1,103. But no statute applicable to this case made it the successor of the state court, nor authorized it to take up the litigation where the action of the state court, invoked by both of the parties, had left it. The motion to remand will be sustained, at the cost of the defendant, who removed the cause to this court.